My name is Mark Roach of Baker and Mukasey, and I represent the petitioner, Mr. Juan Carlos Valdez-Bernal. In the government's rush to deport my client, my client has been denied the basic opportunity to develop and present the facts of his case, and moreover, the right to a fair appeal. And thus, the government has also most fundamentally neglected its obligation to ensure that U.S. citizens are not deported from the United States. And that's at the heart of this case, because my client contends— That's true, and as we'll discuss, the burdens here are incredibly important to this case. But there is indeed a culpable claim to U.S. citizen. And again, if he is indeed a U.S. citizen, neither the board nor anyone else, for that matter, has the right to deport him. So let's start from step one. I mean, there's no real dispute that he was born outside of the United States, correct? Indeed, Your Honor. We start from that. And he agrees to that, and everybody understands that he was born outside the United States. Absolutely. So he claims, given his difficult circumstances that he is, and he says, well, you can't remove me, even though I committed all these crimes or whatever, because I'm a United States citizen and I get my citizenship through my—derivatively, through my father. That's correct. Right? That's correct. Okay. Now, at the hearing, the government had to first show that he was born outside the United States. They did that. That's correct. He then had to say, well, I have a claim to citizenship here—ship, and here it is. And he did that. But doesn't he also bear the ultimate burden of proof? No, Your Honor. Why not? As—so the BIA's decision on page 6 says that my client failed to carry his burden of proof, and they note that he failed to prove it by a preponderance of the evidence. And indeed, that's the wrong standard. And it's a standard that derives from a 1969 decision that predates Congress's adoption of Federal Rule 301. In this Court's decision, in Chau v. I.A.— I was going to say, in Chau we said the same thing, because I was on the panel in Chau. Indeed. We said it was, you know, his burden. We can't—we can't—this panel can't do anything inconsistent with what we said in Chau. What the Court noted in Chau was that the initial—once there is proof of foreign birth, it gives rise to a presumption of alienage. But once that presumption is rebutted, then the government's burden comes back into play. And indeed, the question here is what quantum of evidence is necessary in order to rebut that presumption. And we'd refer to the case, the most recent case, July 2007, in which Your Honor, Judge Block was a judge, in which the Court decided that under the bursting bubble theory, which is what's embodied in Federal Rule of Evidence 301, that it was possible that a specific factual denial could indeed rebut a presumption. In that case, it was a presumption that the BIA had met its statutory notification obligation. That's a little bit—that's a little bit—that case is a little bit different than what we have here. Slightly, but at its heart, the question— Because he's essentially trying to show that he's a United States citizen. He's trying to rebut a presumption. See, as far as I understand what happens here, where he's able to show— if he's able to show—to convince the immigration judge that he's a United States citizen, that will end—that will result in the termination of the removal proceeding. Sure. It doesn't necessarily mean he's a citizen. It just ends the removal proceeding. Correct. So where he—on the other hand, when it comes up to us, if the record reflects that there is a dispute of fact over his claim to citizenship, then what we do is we transfer that issue, the factual dispute, to the district court, for the district court to look at it de novo, completely. It's a whole new ballgame. Discovery, everything else kicks in at that point, and the district court has to make findings effective conclusions of law regarding his citizenship status. Correct. And it comes back to us, and then we resolve the ultimate question. Right. So my other question to you is, you know, on this record here—and I realize he didn't have counsel at the time, and that's another issue—but what he was able to produce seems to suggest that the best he could do would be to show that his father was in the Korean—was a member of the United States Army during the Korean War, and that he may have entered the country shortly before outbreak of hostilities in Korea. Does that really—and he was born in 57, so you have to get him back somehow or other to 47. Indeed, I believe— What in this record points to, you know, that that is—in summary, judgment lingo, that there is a reasonable, factual, genuine dispute that— I would turn the court's attention to page 89 of the administrative record. When the immigration judge questioned my client's mother and asked, did you meet my client's father at the end of World War II? To which she responded, yes, just at the very—when it first started, when he first got out. And as Your Honor notes, the standard here, we must resolve reasonable inferences in favor of my client, the nonmoving party. And that statement is reasonably inferred to mean that, yes, I met his father at the end of World War II when he got out of the United States Army. He would have been 16 years old. You'd have to infer that he was 14 years old or something, or 16 years old, as Judge Bonk just said. It could be anywhere between 14 to 17 that he was serving at that time. But, frankly, that is entirely within the realm of plausibility. In World War II, there are countless accounts of individuals of that age serving in the U.S. Army. But, again, it may not be a model of clarity her comment— So you don't want to go further than you have to go, do you? No. Indeed, 10 years is all we— You say countless numbers of 14-year-old boys serving in the U.S. Army. You may be going a little further than you have to go. But it is within the realm of plausibility. And, again, all reasonable inferences must be drawn in favor of the non-moving party, who, again, here is my client. But, as Your Honor notes, the government— Don't you have a stronger point than the one you're making now? I do. I think we do. All right. And, indeed, what the government is trying to do is to point to ambiguities, inconsistencies, and holes in the record and say that's why it failed. But that is precisely the harm that derived by the denial of my client's right to counsel. Immigration judges have to inform individuals that they may be about to deport from this country that there are available to them free legal services. And they have to do this not only because the regulations are explicitly clear on this point and not only because the Supreme Court requires meticulous care be exercised in deportation hearings— And we have to find another failure to do so prejudiced them in some way, don't we? Technically, no, Your Honor. In the law of the circuit, it is not—it's an open question whether prejudice needs to be shown. Indeed, in the case of Tuadris, they noted that the right to counsel, in cases of the denial of the right to counsel, prejudice may be inferred. And in part because, as the Court noted in Castro-Orion, immigration cases are, perhaps second only to the Internal Revenue Code, the most complex of laws out there. And without counsel to help navigate that, individuals are just presumed to be prejudiced. And here again, we see that there is prejudice because without the benefit of counsel, my client was unable to properly question the witnesses to determine precisely when his father arrived in the United States. Do you have any way of knowing what this person was doing between 1947 and 1957, separate apart from the war service? Well, indeed, we would—it would be excellent to have the opportunity to go back with counsel and try to develop those facts. One problem that makes— He could have been working in the United States, crossing the border to go to work every day back in 1947. Certainly. He would be a teenager then, and that would not be something that would be unreasonable. We have nothing at all about that, and perhaps the absence of counsel contributed to an incomplete record. Certainly. And exactly on that point, my client didn't know to request that the immigration judge use his discretion to issue subpoenas to the government or to other entities that may be able to provide that proof that my client's father was working in the 1940s. But again, we don't have to speculate here today that my client would have taken advantage of the opportunity to have counsel assist him. He told us as much. On page 105 of the administrative record, as my client is trying to determine how he is possibly, while in custody, going to get access to the documents and speak to the witnesses, he says to the judge, and I quote, I have to find someone to help me, at which point we would hope that the immigration judge would recall his obligation to say, start here. Here's a list of free legal services, and these are the folks that will be able to give you exactly what you're asking. So what are you asking us to do? We're asking— What's your bottom line? Do you see the due process violation as the most significant? Remand back to the I.J. for a new hearing? Or do you think that there's a—meets the factual test here? We don't— For a dispute and remand to the—a sentence to the district court for the district court to conduct all the relevant proceedings. The former, Your Honor. We respectfully request that this Court remand the case to the BIA with further instruction that the case be remanded to the immigration court. For a new hearing. Exactly. So in the first instance, all my client is requesting here is an opportunity to develop and present the facts of his case, which is exactly what he's been denied at each and every turn in this case. I take it your good firm and the talent it makes available to help people like this would also carry forward, if we were to remand it, you will represent this person before the immigration judge? As a first-year associate, I'm hesitant to say whether I can combine my firm to do so. But certainly, certainly we would, you know, I would— Right. You don't want to commit yourself, but— Right. You know, but he would understand his situation much better. Certainly. Certainly. I think you're just about up with your time. So why don't you save it? We'll give you a minute for rebuttal. Thanks very much, Your Honors. We'll hear from the government. Good morning. My name is Jesse Bolesa. I represent the Attorney General. I want to start off kind of in a, with the last point made with regard to Petitioner's Counsel. He was afforded, he was provided written notice, oral notice about his opportunity. He wasn't told about the CFR provision that says that he's entitled to a list of counsel that would be free of charge. He was only told about the other part of the CFR that said that you cannot have counsel at government expense. It seems to be two different cups of tea here. Don't you think that he should have been given that list that's in the CFR? There's no evidence that he was not. He was given an opportunity in his written notice— Wait, wait, wait, wait. There is evidence that he was not given that list. There's nothing in the record that tells me that he was actually properly informed of the right to have free counsel? He was provided this written notice. Every notice allows him, and he can read it. I don't see, I don't, if it's in the record where you can show me where that particular provision of the regulations that says a list of counsel free of charge should be furnished to people such as this gentleman, then I would be most grateful. I don't see it, but maybe I missed it. He was certainly provided with an opportunity to go out and seek free legal services. The immigration judge tells him that. I'm talking about a very focused issue. About the CFR provision? Yes. You know, I don't, I would submit that it would be in the record. I'm not entirely sure. I haven't found it. I'm giving you a chance to show it to me if I missed it. So let's go to the fact that he now has counsel, okay? And this, I have the benefit of telling you for once, from the Attorney General's point of view, and we have this tension sometimes, you guys have the authority today to decide his nationality claim to see if there's a genuine issue of material effect. Right. We don't decide it. We would send it. If we thought there was a factual dispute, we would send it to the district court. Right. For the district court to make factual findings and then to transfer the case back to us. Correct. And he has been provided the opportunity, the graciousness of your court, with counsel to submit affidavits and pleadings, and that's, you know, and submit the evidence that he has showing a genuine issue of material fact. So there would be no prejudicial error, even if he wasn't provided. It's not a very high burden. It's a genuine issue of material fact? What do we have? It's a summary judgment stand where you draw all negative, you know, you draw all inferences in his favor and all factual disputes you resolve in his favor, and you say, is this, you know, with what he's got here, has he got enough to go forward in the district court to show the district court that he is more likely than not a United States citizen? Absolutely, and let's talk about that. There is absolutely no evidence that his father was in the United States for more than, for six months before he enlisted in 1951. If you look at his mother's testimony. Doesn't that just point up the need to have counsel represent him so that can be flushed out? Let me ask you this. Maybe you can help me here also. I tried to get some help from you about the CFR regulation. Let me see whether you can help me in another way. I look at the 1957 version of the INA section 301, and I think that the assumption below is that you had to establish residency, but as it reads in 1957, unless I'm wrong here, he would be a U.S. citizen at the time of his birth if his father, a U.S. citizen, was physically present in the United States or its outlying possessions for a period or periods totally, not less than 10 years. And it goes on to say at least five of which were attained at the age of 14 years. So I don't see residency in 1957. This Al Jarrez Garcia case relates to something that existed in 1952 which required residency. But where you have somebody who is working in the United States, crosses the border every day, goes to work, let's assume he was doing that from 1947 on. Let's assume that he was doing that when he got out of the Korean War or whatever. What does physically present mean? It doesn't talk about residency. Is it something? Well, what we're missing is the evidence. And he's had an opportunity to provide support. That's exactly why we need to have counsel. He has counsel today. Here's the point. Can you answer my question whether you see a difference between being physically present in the United States for somebody who comes to work every day in the United States, you think that would qualify as being physically present if there was no residency requirement? As the immigration judge recognized, he would get the credit for the hours that he was physically present in the United States. Even if he were not a resident. Right. Because, in fact, in this case, he was living in Tijuana the entire time with his wife, and he was commuting over the border to work. And so as the immigration judge recognized, he would get the credit hour by hour, and that would take a detailed calculation. But that was not necessary in this case because there's no evidence he was here before he went to New York. Well, we do know that he was here before. We just don't know when, how much longer he was here before he joined the Army. Well, we have his military records. We know when he joined the military. We know when he joined. We know that he came before that. Six months before. The petitioner's brother-in-law and the petitioner's mother said six months before the war broke out, he enlisted. Now, the war broke out in World War II in 1941. Now, he was working here for three years or so, wasn't he? No, no, no. Was that after the war? That was after the war, yeah. He was working in Tijuana. It's not possible that he was working here before he enlisted in the Army. I mean, that would seem to be a logical type of inference. In any event, it all suggests that this record is bereft of proper exploration, and perhaps if he had competent counsel at his disposal, it could have made a big difference. But he had the opportunity. The immigration judge gave him numerous, countless opportunities. Wasn't he in custody? Yes, but he's, you know, as is well known, there are many criminal aliens who are subject to detention. But the statute is very clear on this. By the way, is he still in detention? Yes, he is. And where is he located? I'm not entirely sure. It's in California. There's a habeas petition pending. But the fundamental issue is he has been provided through this court with counsel, something that the immigration judge has absolutely no authority to do and could never do. This court has provided him with the finest legal counsel he could have. What's, in your view, is the narrow issue before this court at this juncture? Is there a genuine issue of material fact that the petitioner's father was in the United States for 10 years before giving birth to his, well, before his son was born in 1957? We don't have anything. And I want to bring up, you know, and this is important. As you go through the record, you're going to see that the petitioner's counsel, they in fact did try and submit evidence of Carlos P. Valdez. And I need to point out to the court things that are fundamentally wrong, why this evidence should be accorded absolutely no weight whatsoever. And it's beyond the mere fact that the middle initial of this person is different from the petitioner's father, whose middle initial is EB. As this court knows, everyone is given an Army serial number. The Army serial number in this case, and for Mr. Carlos P. Valdez, is different than the Army serial number that's in the military record for Carlos EB Valdez. They only get one. And that's corroborated by his dog tags, a copy of which is in the record, which shows that his Army serial number is entirely different from the serial number provided for Mr. Carlos P. Valdez. If you give him the benefit of the doubt, he's missing about two and a half years where he would need some information. How does that situation compare to what happened in Chao, what we did in Chao? I mean, in Chao there wasn't a whole lot. I mean, there was very little. Right. In fact, the government went below and to the district court and filed another summary judgment motion. Right. But they had the benefit of all the district court proceedings. I mean, they were able to do discovery and they litigated it. And the district court in Chao took an extensive amount of time, gave him every opportunity to establish his claim. And he was unable to. And eventually he lost. We dismissed the petition a few years later. But we're here on a summary. I mean, I know this is. So answer my question about Chao. How is the situation in Chao any stronger than what we have here? All right. I mean, looking at this individual, he's at least three years short. Drawing every reasonable inference to the other side. He's three years short. He didn't work in the United States during that three years. Well, anyways. That's a guess. It's a matter of an exercise in guesswork. You know, the problem is to bless and you don't have to worry about being so defensive for the government. The problem in this case is he did not have counsel at the time, nor does the record show that he was advised that there would be counsel provided for him at no cost. So there are holes. There's no doubt about it. But what we have to consider is whether if he had had counsel, those holes would have been filled in. Let's assume we don't know. If we don't know, what happens then? We send it back and let him get a lawyer, don't we? Well, here's the problem with that scenario. And I'm going to go over, but if I can have the courts allow it.  Answer the question. Here's the problem. Answer Judge Ferris' question. The statute makes very clear that really with a nationality claim, there's really two options. Either you go down or you decide it for yourself. So you go down to district court, I mean. So the government would submit that if you find that there's a genuine issue, you submit it down. Because if you go back to the board, if you go back to the board, there's no guarantee he's going to be. They're not going to. Congress does not allow the agency to provide counsel. No, but he could get his own counsel now. He's thoroughly advised. He knows what to do. And he could start all over with a new hearing. And as I said, my understanding is that when these nationality claims are raised in a removal hearing, if the I.J. believes that he's more likely than not a citizen, what the result is is termination of the proceeding. Oh, the district court has the same power. Well, the district court. All the district court does is make findings of fact that they send to us. We then make the decision about what to do with the petition. Right. And then it's, in fact, it's, I mean, at that point they'll determine he can't be removed because he's a citizen. I mean, in this case, I mean, you know, the best course of action in the government's view would be to send it, to send it to district court if you find there's a genuine issue. Okay. All right. Thank you. We appreciate your argument. I'll give you one minute rebuttal. Thank you. A couple quick points. Mr. Valdez is currently in San Diego. That's where he's being held. And as to the last point, there's been numerous cases in the denial of right to counsel by Watt to Wadriss where, because that violation is so important, that the case goes back to the American version. This record almost conclusively establishes that the war he's talking about was the Korean War. Now, I'm not suggesting we're going to make any factual finding because that's not our function. But you know the narrow read you're using to the best of your advantage, your client's advantage, and that's what you're supposed to do. So nobody's going to criticize you for it. But let's assume we do what you want and we send it back and he gets counsel. And you, let's assume it's not you. Let's assume there's a first year associate you say you can't guarantee. Assume it's somebody else. What are they going to find to say to us that he was in World War II rather than the Korean War? Well, they'll go back. They will speak to witnesses. No, they've got to use his dog tag. They'll use his number and they'll say, did this number serve in World War II? Is it your position that they're going to find that he served in both? That's an important point, Your Honor. Counsel says that we have the entire military record before us. But as counsel concedes in the brief, the records that would be perhaps dispositive of this issue were burned in a fire in the government's possession, which does make it quite difficult, which beyond the fact that we resolve reasonable cases in favor of the non-armed parties. But that's not dispositive. The question is whether he was working in this country for that requisite period of time. Whether it was World War II or not World War II is almost an irrelevancy. If that were the case, that could be more fuel to add to his case. But we have to find out what he was doing from 47 to 57. It's as simple as that. Indeed. And there are numerous avenues which an attorney could explore in order to get that information. And we hope that he has the opportunity to do so. Okay. Thank you, counsel. By the way, we appreciate the arguments from both sides. Your Honor, if I may. What's that? I want to therefore refer you to the record of 276 where he was told that the three meals served. Okay. All right. Well, we'll take a look at that. Let me just say this. We appreciate the arguments of both sides, the government and counsel for petitioner, and the court. I'm sure Judge Block would join in this as well. We're very pleased that your firm would be willing to provide pro bono counsel for the petitioner in this case and for all the other counsel who do provide pro bono assistance to many petitioners who are in these difficult proceedings. Thank you, Your Honor. We are all going to make speeches, but I agree with what's just been said. And the other thing with the Attorney General, the reason it's so critical that we discover whatever the facts are is because of the consequences to this guy if we don't. In other words, his only white line is that he can prove he was a citizen of the United States. Isn't that pretty much the status of the record? And that is. And it's fundamental. Yes. I mean, first, citizenship is in tandem with his liberty. I understand that. And the Attorney General doesn't understand that. That's why. Well, they send a guy here and he thinks, this is a case I shouldn't lose. And then you have to go back and say, well, we don't know. I don't know whether he's going to lose it or not yet. But anyway, I wanted you to be assured that the critical issue here is very critical to the part. I think our brief makes clear that it is fundamental. It's not. It's a person's liberty. Thank you. In any event, we do appreciate the arguments. Bye now. Have a good day. Okay. We're going to leave the world of immigration law and turn to United States v. Leander Barnes.
judges: Farris, Paez, Block